UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBERT D. PIPPENGER, JR., )
 )
    Plaintiff, )
 ) Case No. 1:09-CV-167
v. )
 ) Chief Judge Curtis L. Collier
MERRILL LYNCH, PIERCE, FENNER )
& SMITH INCORPORATED, )
 )
    Defendant. )

## MEMORANDUM

Before the Court is Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated's Motion to Compel Arbitration and Stay the Proceeding (Court File No. 5), together with a supporting memorandum (Court File No. 6). Plaintiff Robert D. Pippenger, Jr. filed a response styled as an objection to Defendant's motion (Court File No. 7) with a supporting brief (Court File No. 8); Defendant filed a reply (Court File No. 10). For the following reasons, the Court will **GRANT** Defendant's motion and will **STAY** the action pending arbitration.

**I.   RELEVANT FACTS AND PROCEDURAL HISTORY**

Because Defendant's Motion comes to the Court in an interlocutory, prediscovery posture, the Court takes the facts from Plaintiff's complaint, which Defendant removed from the Circuit Court for Hamilton County, Tennessee on June 18, 2009 (Court File No. 1 & Ex. A). Plaintiff, a registered representative in the securities industry, began working for Defendant, a brokerage and financial services firm, on or about June 8, 2007. Plaintiff alleges Defendant made several promises to him to entice him to join Defendant and bring his existing clients with him. Plaintiff further alleges that after he began working for Defendant, information was made known to the public

concerning Defendant's business practices that was inconsistent with Defendant's implied covenant of good faith and fair dealing. As a result, Plaintiff alleges, investors expressed concern and Plaintiff was discouraged from attracting new clients and servicing his existing clients due to Defendant's work environment.

Plaintiff avers a number of other wrongs committed by Defendant, including discontinuing the Deferred Stock Plan it had promised to Plaintiff as part of his compensation package, failing to provide him a new financial package when Defendant was bought by Bank of America, improperly managing his Short-Term Deferred Contingent Award Plan, and failing to provide him with necessary administrative support. Because of all these conditions, Plaintiff alleges he was constructively discharged and had to seek employment elsewhere in the financial services industry. Plaintiff's complaint states causes of action for negligent misrepresentation, breach of contract, interference with contract and business relations, and defamation. The latter count alleges Defendant made false statements to Plaintiff's clients. Defendant removed the complaint to this Court based on diversity of citizenship, 28 U.S.C. § 1441(a).

## II. DISCUSSION

This Court has previously summarized its legal framework for evaluating motions to compel arbitration:

> The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, reflects a legislative recognition of "the desirability of arbitration as an alternative to the complications of litigation." *Wilko v. Swan*, 346 U.S. 427, 431, 74 S. Ct. 182, 185, 98 L. Ed. 168 (1953). The purpose of the FAA was to reverse "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, 94 S. Ct. 2449, 2453, 41 L. Ed. 2d 270 (1974). The FAA "was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.'" *Id.* at 510-11 (citations omitted).

2

Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. According to the United States Supreme Court, this section is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

The provisions of the FAA are mandatory. *See* 9 U.S.C. §§ 3-4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (citing 9 U.S.C. §§ 3-4).

When a party asks a federal court to compel arbitration of a dispute, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Because arbitration is a matter of contract, a party cannot be required to submit to arbitration a dispute it did not agree to arbitrate. *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 648-49, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1984). When a contract contains an arbitration clause, however, doubts regarding the scope of the clause should be resolved in favor of submitting a particular dispute to arbitration. *Id.* at 650; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003).

The Court has two tasks as it considers the pending motion to stay this action and compel arbitration: (1) determine whether the parties agreed to arbitrate, and (2) determine the scope of that agreement. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

*Wholesale Tape & Supply Co. v. iCode, Inc.*, No. 1:04-CV-266 (E.D. Tenn. Feb. 3, 2005) (Court File No. 9), *adopted by Wholesale Tape & Supply Co. v. iCode, Inc.*, No. 1:04-CV-266, 2005 WL

3

3535148, at *2 (E.D. Tenn. Dec. 22, 2005).

### A. Validity of Arbitration Agreements

The parties agree that, upon accepting employment with Defendant, Plaintiff signed a "Uniform Application for Securities Industry Registration or Transfer," commonly called a "Form U-4." The Form U-4 contained the following language to which the applicant indicated his acknowledgment and consent:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Court File No. 5 Ex. A § 15A ¶ 5 (emphasis in original).) The parties also agree Plaintiff signed a "3080. Disclosure to Associated Persons When Signing Form U-4," which stated:

> You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(Court File No. 5 Ex. B.)

Here, Plaintiff questions neither the validity of these agreements nor the fact he signed them, indicating his assent to their terms. As there is no indication these agreements are invalid for any other reason, the Court finds Plaintiff and Defendant entered valid agreements which contained binding arbitration clauses. The next question—the one Plaintiff disputes—is whether the alleged conduct over which he sues Defendant fell within the scope of the arbitration clauses.

### B. Scope of Arbitration Agreements

4

Plaintiff contends some of his claims—specifically, those for interference with contract and business relations, and for misrepresentations—are not covered by the arbitration agreements because they relate exclusively to Defendant's conduct before or after the parties' employment relationship. Defendant argues all Plaintiff's claims arose either from his performance or from its business activities which involved Plaintiff.

Plaintiff cites *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 109 (6th Cir. 1985), for the proposition that when a party

> seeks to compel arbitration of a claim which is brought after the termination of the employment relationship, and which is not based upon a contractual right or duty created by the employment agreement (for example by a severance pay clause or a non-solicitation agreement, which are both intended to operate following termination), the proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship.

*Id.* Plaintiff summarizes *Aspero* as ruling that the plaintiff employee's "claims of defamation, invasion of privacy, and intentional infliction of emotional distress were arbitrable since they depended on an [sic] determination of her performance as a broker for the defendant." (Court File No. 8, at 2-3.) Plaintiff's sole attempt to counter this adverse, controlling authority is to state that "*Aspero* is not controlling on the claims presented by Mr. Pippenger." (*Id.* at 3.) This provides the Court insufficient evidence from which it could conclude Plaintiff's claims against Defendant arose entirely apart from his employment relationship.

Indeed, from all indications, the opposite is true. Plaintiff's claims for breach of contract and negligent misrepresentation involve promises that were allegedly broken during Plaintiff's employment, rendering Defendant's environment an unfit place for him to work (even if the promises themselves were made before Plaintiff's employment started). As for Plaintiff's claims

5

of interference with contract and business relations and defamation, the Court assumes a simple counterfactual: if Defendant had never employed Plaintiff, would those disputes have developed? To put it succinctly, no. With regard to the interference with contract and business relations claim, Plaintiff's complaint alleges that "[s]hortly after Mr. Pippenger announced that he would be affiliating with another financial firm, Merrill Lynch, through its employees and agents intentionally and willfully engaged in a pattern of conduct designed to harm Mr. Pippenger." (Compl. ¶ 22.) In other words, the complaint alleges that precisely because he worked for Defendant, then announced he would leave for another employer, Plaintiff suffered harm at the hands of Defendant through its employees and agents. The Court is hard-pressed to come up with a more classic example of a dispute that arose from an employment relationship; it is difficult to imagine Defendant would have engaged in such conduct had it never employed Plaintiff.

The same holds true for Plaintiff's defamation claim. This claim makes the sparse allegation that Defendant disseminated false information to Plaintiff's clients, intentionally or with reckless disregard for Plaintiff's rights. Yet the complaint gives absolutely no indication Defendant would have engaged in this conduct had Plaintiff never come to work there. Plaintiff argues "[t]hese claims could have been brought even if Mr. Pippenger were never an employee of Merrill Lynch" (Court File No. 8, at 3), but again, it is unclear from Plaintiff's complaint why Defendant would have engaged in that type of conduct if Plaintiff had never been its employee.

Therefore, the Court concludes the scope of the arbitration agreements at issue extended to cover all of Plaintiff's claims, rendering arbitration of those claims appropriate.[1]

---

[1] Even if the Court had doubts about the scope of the arbitration agreements (and it does not), the Court would resolve those doubts in favor of arbitration, as it must. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

6

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion and will **STAY** the action pending arbitration.

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**

7